UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TORSH INC. | CIVIL DOCKET |
| VERSUS | NO. 22-2862 |
| AUDIO ENHANCEMENT, INC. | SECTION: "J"(2) |

### ORDER & REASONS

Before the Court is a *Motion to Dismiss Pursuant to Rule 12(b)(2) and (b)(6)* **(Rec. Doc. 14)** filed by Defendant Audio Enhancement, Inc., and an opposition (Rec. Doc. 16) filed by Plaintiff Torsh, Inc. to which Defendant has replied (Rec. Doc. 19). Having considered the motion and legal memorandum, the record, and the applicable law, the Court finds that the motion should be **DENIED**.

### FACTS AND PROCEDURAL BACKGROUND

This case arises from an alleged breach of contract and misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA"). Plaintiff, Torsh, Inc. ("Torsh") is a software development company whose primary product is "TORSH Talent, a cloud-based learning platform." (Rec. Doc. 16, at 2). Torsh is a Delaware corporation with its principal place of business in New Orleans, Louisiana. Defendant Audio Enhancement, Inc. ("AE") is an education technology company that provides classroom audio and camera systems to schools. AE is a Utah corporation with its principal place of business in Utah.

Plaintiff alleges that beginning in 2016, AE approached Torsh with the goal of a potential collaboration which culminated in the February, 2019 Business Services

1

and Software Resale Agreement ("the Agreement") to create co-branded platform referred to as the "Integrated Solution." Under this Agreement, Torsh agreed to provide limited and non-transferable access to its technology as well as its marks and other identifiers for the purposes of the Integrated Solution. In exchange, AE agreed to pay licensing fees and, among other things, market and promote the Integrated Solution, provide support services, and handle billing and invoicing. This Agreement was subject to an initial term of three years which would automatically renew for successive one-year terms without a written 90-day notice of termination.

Plaintiff alleges that AE approached Torsh about acquiring the company. However, when negotiations to acquire Torsh were unproductive, Torsh alleges that AE began to "reverse engineer and use Torsh's technology and proprietary information to develop a competing software platform and suite of services." (Rec. Doc. 16, at 4). As the renewal period for the Agreement approached, Torsh asserts that AE avoided finalizing pricing for the subsequent term. Then on February 21, 2022, one day before the Agreement was set to renew automatically, AE wrote Torsh purporting to terminate the Agreement, citing the lack of finalized pricing and a guaranteed minimum purchase amount as evidence that there was no enforceable contract between the parties. (Rec. Doc. 16, at 5). Torsh then filed suit in this Court against AE on August 24, 2022. AE has filed a motion to dismiss Torsh's complaint, claiming a lack of personal jurisdiction under Fed. R. Civ. Pro. 12(b)(2) and alternatively, the dismissal of Count 2 of the Complaint pursuant to Fed. R. Civ. Pro. 12(b)(6). (Rec. Doc. 14).

## **LEGAL STANDARD**

Rule 12(b)(2) of the Federal Rules of Civil Procedure permits dismissal of a suit for lack of personal jurisdiction. Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists. *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a prima facie showing suffices. *Id.* The court must accept the plaintiff's uncontroverted allegations and resolve all conflicts between the facts contained in the parties' affidavits and other documentation in favor of jurisdiction. *Id.*

A federal court sitting in diversity must satisfy two requirements to exercise personal jurisdiction over a nonresident defendant. *Pervasive Software Inc. v. Lexware GmbH & Co. Kg*, 688 F.3d 214, 220 (5th Cir. 2012). First, the forum state's long-arm statute must confer personal jurisdiction. Second, the exercise of jurisdiction must not exceed the boundaries of the Due Process Clause of the Fourteenth Amendment. *Id.* (citing *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999)). The limits of the Louisiana long-arm statute are coextensive with constitutional due process limits. *Jackson v. Tanfoglio Giuseppe, SRL*, 615 F.3d 579, 584 (5th Cir. 2010) (citing *Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242-43 (5th Cir. 2008)). Therefore, the inquiry is whether jurisdiction comports with federal constitutional guarantees. *Id.*

The Due Process Clause of the Fourteenth Amendment guarantees that no federal court may assume jurisdiction *in personam* of a non-resident defendant unless

the defendant has certain "minimum contacts" with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Sufficient minimum contacts will give rise to either specific, "case-linked" jurisdiction or general, "all-purpose" jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).

Specific jurisdiction is confined to adjudication of "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id*. In order to establish specific jurisdiction, a plaintiff must show that "(1) there are sufficient (i.e., not 'random fortuitous or attenuated') pre-litigation connections between the non-resident defendant and the forum; (2) the connection has been purposefully established by the defendant; and (3) the plaintiff's cause of action arises out of or is related to the defendant's forum contacts." *Pervasive Software*, 688 F.3d at 221; *accord Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985). The defendant can then defeat the exercise of specific jurisdiction by showing that it would be unreasonable. *Burger King*, 471 U.S. at 476-77; *Pervasive Software*, 688 F.3d at 221-22.

General jurisdiction, on the other hand, does not require a showing of contacts out of which the cause of action arose. *Goodyear*, 131 S. Ct. at 2851. A court may assert general jurisdiction over foreign defendants "to hear any and all claims against them." *Id*. The proper consideration when determining general jurisdiction is whether the defendant's "affiliations with the State are so 'continuous and systematic'

4

as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (alteration in original) (quoting *Goodyear*, 131 S. Ct. at 2851). Only a limited set of affiliations with a forum will render a defendant amenable to general jurisdiction there. *Id.* at 760. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* (quoting *Goodyear*, 131 S. Ct. at 2853-54). With respect to a corporation, "the place of incorporation and principal place of business" are paradigm bases for general jurisdiction. *Id.* General jurisdiction does not exist simply because of "the magnitude of the defendant's in-state contacts." *Id.* at 762 n.20. Rather, a court must appraise the defendant's activities "in their entirety, nationwide and worldwide." *Id.*

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232

(5th Cir. 2009). However, "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

## DISCUSSION

### A. PERSONAL JURISDICTION

Defendant, AE claims that Torsh's complaint "does not establish a meaningful connection between AE and Louisiana" and should be dismissed for lack of personal jurisdiction. Plaintiff does not contend that AE is subject to general jurisdiction in Louisiana. Therefore, the sole focus of this inquiry is to determine whether AE is subject to specific jurisdiction. First, this Court must examine the extent of AE's connections with the forum and whether these were merely random, fortuitus, or attenuated or whether they were purposefully actions directed at the forum. At the center of this case is a contract, the Business Services and Software Resale Agreement. For jurisdictional purposes, a contract is merely an

> intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction. It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

*Id.* (internal citation omitted). Therefore, the Court must look to both the negotiation and execution of the Agreement to determine whether AE is subject to personal jurisdiction in this forum.

6

Torsh alleges in its complaint that AE first approached Torsh about a possible business agreement in 2016. (Complaint, Rec. Doc. 1 ¶ 17). Even AE admits that "AE and Torsh operate in an industry with relatively few players and were well known to each other before they conducted business together" and does not allege that it was somehow unaware that Torsh is a Louisiana company. (Rec. Doc. 14, at 4). Torsh describes a protracted negotiation period, with at least one video conference between AE and Torsh's office in Louisiana (Complaint, Rec. Doc. 1 ¶ 17) which led to an in-depth business relationship where the two companies were endeavoring to offer "a fully integrated platform" which would be bundled to a co-branded "Integrated Solution." Torsh provided AE with a license to access its technology, services, and marks and other identifiers while AE agreed to pay certain fees, market and promote the Integrated Solution, provide support services, and handle billing and invoicing. *Id.* at 3. Furthermore, Torsh alleges that AE "solicits and/or currently has and/or services customers in Louisiana" and has a sales representatives dedicated to Louisiana who either sold or attempted to sell its competing platform in breach of the Agreement which Torsh alleges it developed by misappropriated trade secrets obtained through the Agreement. *Id.* at ¶¶ 2, 6. After the parties entered into the initial Agreement, two separate amendments were also executed. *Id.* at ¶¶ 33, 34. Torsh also alleges that in early 2021, AE attempted to acquire Torsh for the purposes of owning the technology it was licensing under the Agreement. *Id.* at ¶ 42. When this acquisition failed, Torsh alleges that AE then expressed interest in expanding its presence in Louisiana with more sales representatives. *Id.* at ¶ 46.

Plaintiff' argues with respect to its breach of contract claim that AE "approached Torsh, a company it knew to be located – along with its intellectual property – in New Orleans." (Rec. Doc. 16, at 9). Plaintiff argues that AE pursued a relationship and contract with Torsh over a period of several years which culminated in the Agreement which was the result of "extensive negotiations and a detailed, arms-length transaction between two sophisticated businesses." *Id.* Torsh asserts that AE reached out to Torsh by telephone and email repeatedly in order to establish a business relationship with a Louisiana corporation. *Id.* Furthermore, Torsh asserts that the resulting Agreement contemplated a "multi-year partnership that would pursue customers in Louisiana (and other states) and whereby all customers were and would be serviced by Torsh from New Orleans." *Id.* at 10. As to its misappropriation of trade secrets claim, Torsh asserts that AE "relied on subterfuge" to misappropriate Torsh's trade secrets, secrets which AE only had access to through the Agreement. Specifically, Torsh alleges that "AE did not seek to terminate the Agreement [with Torsh] because [AE] was using its continued access to Torsh's trade secrets and proprietary information to reverse-engineer Torsh's technology and develop its own competing products and services[.]" (Complaint, Rec. Doc. 1 ¶ 47). Torsh alleges that AE then attempted to sell its competing product, developed through the use of these trade secrets, in the Louisiana market. *Id.* at ¶ 6.

AE, however, argues that these purported contacts with Louisiana are not sufficient for personal jurisdiction. AE asserts that all negotiations regarding the agreement occurred by telephone and email and that no one from AE traveled from

8

Louisiana in connection with the negotiation, execution, or performance of the Agreement. (Rec. Doc. 14, at 7). AE also disputes that it had any office or employees in Louisiana during the relevant time period, and that none of AE's sales in Louisiana concerned the services or technology at issue in this dispute. *Id.* at 4. Furthermore, in regard to Torsh's misappropriation of trade secrets claim, AE argues that Torsh's complaint does not allege that any of the alleged misappropriation occurred in Louisiana. *Id.* at 8.

AE's argument that this Court lacks personal jurisdiction because none of its employees physically visited Louisiana in conjunction with the agreement is without merit. It is well settled that physical presence within the forum is not required for personal jurisdiction. *See Burger King*, 471 U.S. at 476. Therefore, the fact that negotiations occurred remotely does not weigh against a finding of personal jurisdiction.

Taking all of these contacts together, it seems clear that AE purposefully availed itself of both the protections and consequences of Louisiana law. AE targeted a Louisiana corporation with the intent to establish a long-term contractual relationship. This long-term relationship involved sales representatives dedicated to the Louisiana market and an effort to market the Integrated Solution. AE would have to be aware that a breach of the Agreement would harm a Louisiana corporation and would thus subject it to the control of Louisiana laws.

Furthermore, Torsh's claims arise out of these contacts. Torsh's first claim is a breach of the Agreement which Torsh claims automatically renewed when AE failed

9

to properly terminate the Agreement. *Id.* at ¶ 66. AE pursued a Louisiana corporation, negotiated with it, establish a long-term contract with it, and allegedly dedicated sales representatives to the Louisiana market for the purpose of carrying out the Agreement. A breach of the Agreement necessarily arises out of these contacts. As to Torsh's misappropriation of trade secrets claim, Torsh claims that AE gained access to Torsh's proprietary information during the course of the Agreement and willfully and knowingly used this information without Torsh's consent. Again, AE's alleged behavior under this claim arises out of its contact with the forum, without which AE would have never been able to access the technology at issue. Without the multi-year Agreement and the negotiations and performance thereof, AE would have never accessed Torsh's trade secrets. Therefore, Torsh's claims arise out of AE's contacts with the forum.

Torsh, as the Plaintiff, does not need to prove jurisdiction by a preponderance of the evidence but merely needs to establish a prima facie case. *Luv N' Care, Ltd.*, 438 F.3d at 469. Although AE disputes several of the jurisdictional facts upon which Torsh relies such as whether any of the sales conducted in Louisiana during the relevant period involved the disputed technology, this conflict and any other factual dispute must be resolved in favor of the Plaintiff at this stage. Therefore, Torsh has made a prima facie case of the requisite minimum contacts necessary for personal jurisdiction.

Now, the Court must briefly turn to whether it would offend "traditional notions of fair play and substantial justice" to force this Defendant to litigate in this

10

forum. *Int'l Shoe Co.*, 326 U.S. at 316. In making this determination, courts consider "the burden on the defendant having to litigate in this forum; the forum state's interests in the lawsuit; the plaintiff's interest in convenient and effective relief; the judicial system's interest in efficient resolution of controversies; and the state's shared interest in furthering fundamental social policies." *Burger King*, 471 U.S. at 477. It is up to the Defendant to make a showing of unfairness, and AE has provided no evidence that litigating in this forum would be unfair or unreasonable. Therefore, AE's motion is **DENIED** as to its 12(b)(2) arguments.

### B. MISAPPROPRIATION OF TRADE SECRETS

Having determined that Torsh has made a prima facie showing of personal jurisdiction, this Court must now determine whether Torsh has stated a claim upon which relief can be granted as to its misappropriation of trade secrets claim. Misappropriation claims under the Defend Trade Secrets Act requires a plaintiff to plead: (1) existence of a trade secret, (2) misappropriation of the trade secret by another, and (3) the trade secret's relation to a good or service used or intended for use in interstate or foreign commerce. *Complete Logistical Servs. LLC v. Rulh*, 350 F. Supp. 3d 512, 517 (E.D. La. Oct. 15, 2018). *See* 18 U.S.C. § 1832 et seq.

AE does not dispute that Torsh has properly pleaded the first and third elements of this claim. However, AE argues that Torsh has not satisfied the second element because the complaint merely contained "rank speculation and conclusory allegations" regarding misappropriation. (Rec. Doc. 14, at 9). AE compares Torsh's claims to *Phazr, Inc. v. Ramakrishna*, 2020 WL 5526554 at *4 (N.D. Tx. Sept. 14,

11

2020) in which the court held that Phazr's complaint failed because it did not specify how the trade secrets were actually used or incorporated into the allegedly offending product. Like in Phazr, AE argues that Torsh has not specified how the trade secrets were used. However, Torsh argues that *Phazr* is distinguishable from this case because Torsh "has squarely identified how AE incorporated Torsh's trade secrets into the "My Workshop" platform." (Rec. Doc. 16, at 21). Torsh's complaint alleges in relevant part that

> Upon information and belief, the information and materials AE used to develop its "My Workshop" program – namely, Torsh's web API connecting physical cameras in the classroom to the TORSH Talent platform, information regarding how the API was optimized to enable the transfer of large video files and how the larger files could be effectively stored without jeopardizing software functionality or speed for the end-user, the wireframes regarding the custom applications built by Torsh, and other components of TORSH Talent – constitute "trade secrets" belonging to Torsh within the meaning of 18 U.S.C. § 1832, *et seq*.

(Complaint, Rec. Doc. 1, ¶ 74). In *Phazr*, the court found that the plaintiff failed to allege how the technology at issue was used by the defendant, but in this case, Torsh alleges how the technology was used: it was used to develop the "My Workshop" program.

AE asserts that Torsh is merely attempting to base its misappropriation claim on AE's "access to trade secrets and the timing of its development of a competing product." (Rec. Doc. 14, at 10). Of course, Torsh cannot base its claim merely on "the coincidence of timing and on the fact that [the defendant's products] perform the same general function." *Spear Marketing v.*

*BancorpSouth Bank*, 791 F.3d 586, 601-02 (5th Cir. 2015). However, this is not what Torsh is doing. Rather Torsh alleges that AE took specific features of Torsh's technology, namely regarding the transfer and storage of large video files and used them to develop its "My Workshop" product. Although Torsh's complaint does not go into great detail on the exact technological specifications of the Integrated Solution and the My Workshop product, Torsh does more than merely conjecture based on AE's timing and access. Taking Torsh's claims as true, if AE did use Torsh's API in developing its "My Workshop" program, then Torsh has pleaded a claim of trade secret misappropriation upon which relief can be granted.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant, Audio Enhancement, Inc.'s *Motion to Dismiss Pursuant to Rule 12(b)(2) and (b)(6)* be **DENIED**.

New Orleans, Louisiana, this 14th day of March, 2023.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE