UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TORSH, INC. | * | CIVIL ACTION |
| VERSUS | * | NO. 22-2862 |
| AUDIO ENHANCEMENT, INC. | * | SECTION "P" (2) |

## <u>ORDER AND REASONS</u>

Pending before me is Defendant Audio Enhancement, Inc.'s Motion to Compel.  ECF No. 40.  Plaintiff Torsh, Inc. timely filed an Opposition Memorandum.  ECF No. 44.  Defendant sought leave and filed a Reply Memorandum.  ECF No. 49.  No party requested oral argument in accordance with Local Rule 78.1, and the court agrees that oral argument is unnecessary.

Having considered the record, the submissions and arguments of counsel, and the applicable law, Defendant's  Motion to Compel is GRANTED IN PART AND DENIED IN PART as stated herein.

## I.     <u>BACKGROUND</u>

This is a breach of contract and misappropriation of trade secrets case.  Plaintiff Torsh, Inc. ("Torsh") is a software development company whose primary product is "TORSH Talent, a cloud-based learning platform."  ECF No. 1 ¶¶ 9-10.  Defendant Audio Enhancement, Inc. ("AE") is an education technology company that provides classroom audio and camera systems.  *Id*. ¶ 16.

On February 22, 2019, the parties entered into a Business Services and Software Resale Agreement, which contained an initial three-year term and renewal provisions.  ECF No. 1-1 ¶ 6.  Plaintiff alleges that, during the initial three-year term, AE approached Torsh about acquiring it but after unproductive negotiations, AE began to "reverse engineer" Torsh's technology and proprietary information to develop a competing software platform and suite of services.  *Id*. ¶¶ 42-47.  It further contends that AE avoided finalizing pricing for the renewal term, and one day before

the automatic renewal date, AE purported to terminate the Agreement, citing the lack of finalized pricing and a guaranteed minimum purchase amount as evidence that there was no enforceable contract between the parties.  *Id*. ¶¶ 53-57.

## II.     <u>THE PENDING MOTION TO COMPEL</u>

Through this motion to compel, Defendant AE seeks to strike Torsh's "boilerplate objections" and to compel Torsh (1) to provide a reasonably particularized identification of each trade secret, and confidential proprietary item, and software that AE allegedly misappropriated, including the exact identity, scope, constitutive elements, and content of each alleged trade secret (Interrogatory Nos. 1-2, 5); (2) to identify each alleged infringing or derivative component of any AE products (Interrogatory Nos. 3-4); (3) to specify the date(s) of each disclosure and name of each discloser of any allegedly misappropriated secret (Interrogatory Nos. 6-7); (4) to identify the date of disclosure and identity of each person to whom Torsh disclosed the trade secret(s) (Interrogatory No. 8); (5) to identify the author(s) or inventor(s) of each allegedly misappropriated trade secret (Interrogatory No. 9); (6) to quantity its damages (Interrogatory Nos. 11-12);  and (7) to provide financial statements and tax returns for 2016 through August 24, 2022 (RFP Nos. 31-32).  ECF No. 40.  In addition, AE asks that boilerplate objections be stricken from, and non-privilege documents be produced in response to, RFP Nos. 3, 4, 5, 6, 7, 10, 11, 12, 14, 15, 16, 17, 18, 20, 21, 23, 26, 29, 30, 34, 36, and 38.  *Id*.  AE argues that Torsh has not identified its alleged trade secrets with the specificity required to enable AE to defend itself in this litigation, and indeed cannot discern whether Torsh contends it misappropriated source code, particular design elements, strategies, API components, or something else.  ECF No. 40-11 at 4-11.

In Opposition, Torsh argues that, having lost its motion to dismiss, AE is attempting to use discovery to test the merits of Torsh's trade secrets claim via a premature summary judgment

motion.  ECF No. 44 at 3-4.  Torsh argues that it has sufficiently identified its trade secrets, including in its supplemental responses, by identifying four trade secrets[1] and, pursuant to Rule 33(d), providing relevant business records.  *Id*. at 5-6.  Torsh disputes AE's fundamental premise that API cannot qualify as a trade secret and argues that it has specifically identified the relevant code used in those APIs.  *Id*. at 7-8.  Torsh argues that it has not yet conducted discovery and contends it is unfair to limit its presentation when AE is the only party who knows the full extent of its misappropriation.  *Id*. at 8.  Torsh also asserts that it has fully responded to the discovery requests and it cannot provide more detail regarding damages because it needs to determine AE's profits.  *Id*. at 9-15.

In Reply, AE argues that the four trade secrets identified by Torsh are simply categories, not specific descriptions of the trade secrets, as required in this sophisticated misappropriation case.  ECF No. 49 at 1-3.  AE argues that the disclosure date of and disclosing person of each alleged trade secrets is necessary to determine whether Torsh had access to same.  *Id*. at 3-4.  It argues that the identity of recipients of the alleged trade secrets is necessary to determine whether Torsh took reasonable measures to maintain the secrecy of its information, and identity of the author is necessary to determine whether Torsh in fact developed the trade secret and narrow the focus of fact depositions.  *Id*. at 4-5.  AE argues that Torsh's financial information is relevant to its consequential damages claim for breach of contract, and that Torsh evidently concedes the impropriety of its boilerplate objections.  *Id*. at 5-6.

## III.   APPLICABLE LAW

### A.  The Scope of Discovery

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is

---

[1] Torsh summarizes its four trade secrets as its Mobile API, Torsh Talent API, unique specifications embodied in those APIs, and the ability and technology to transmit large video files through Torsh Talent.  ECF No. 44 at 6.

relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable."  FED. R. CIV. P. 26(b)(1).

The threshold for relevance at the discovery stage is lower than the threshold for relevance of admissibility of evidence at the trial stage.[2]  At the discovery stage, relevance includes "[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."[3]  Discovery should be allowed unless the party opposing discovery establishes that the information sought "can have no possible bearing on the claim or defense of the party seeking discovery."[4]  If relevance is in doubt, a court should allow discovery.[5]

Rule 26's advisory committee comments make clear that the parties and the court have a collective responsibility to ensure that discovery is proportional.  The party claiming it would suffer an undue burden or expense is typically in the best position to explain why, while the party claiming the information is important to resolve the issues in the case should be able "to explain the ways in which the underlying information bears on the issues as that party understands them." FED. R. CIV. P. advisory committee notes to 2015 amendment.  Thus, it bears the burden of making a specific objection and coming forward with specific information to address the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

---

[2] *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011) (citations omitted).
[3] *Id*. (citations omitted).
[4] *Dotson v. Edmonson*, No. 16-15371, 2017 WL 11535244, at *3 (E.D. La. Nov. 21, 2017) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005)).
[5] *E.E.O.C. v. Simply Storage Mgmt., L.L.C.*, 270 F.R.D. 430, 433 (S.D. Ind. 2010) (quoting *Truswal Sys. Corp. v. Hydro–Air Eng'r, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987) (internal quotations omitted)).

information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[6]

"The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." FED. R. CIV. P. advisory committee's notes to 2015 amendment. Rule 26(b)(2)(C)(i)–(iii) directs the Court to limit the frequency or extent of discovery otherwise allowed, if it determines: (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery had ample opportunity to obtain the information; or (3) the proposed discovery is outside the scope of Rule 26(b)(1).

### B. <u>Duties in Responding to Discovery</u>

#### 1. Full and Complete Responses

"Discovery by interrogatory requires candor in responding. . . . The candor required is a candid statement of the information sought or of the fact that objection is made to furnishing the information. A partial answer by a party reserving an undisclosed objection to answering fully is not candid. It is evasive."[7] The fact that an interrogatory calls for a thorough response—one that will take time and effort to answer—does not make it improper.[8] A party is not required to make an extensive investigation in responding to an interrogatory, but it must review all sources of responsive information reasonably available and provide the responsive, relevant facts reasonably available.[9] Where an interrogatory answer "'as a whole disclose[s] a conscientious endeavor to

---

[6] *Mir v. L–3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 226 (N.D. Tex. 2016).

[7] *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616–17 (5th Cir. 1977).

[8] *Areizaga v. ADW Corp.*, 314 F.R.D. 428, 437 (N.D. Tex. 2016) (citing *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 307–08 (5th Cir. 1973)).

[9] *Id.* (citing 8B WRIGHT, MILLER & MARCUS, FED. PRAC. & PROC. § 2174 (3d ed. 2013)).

understand the question[] and to answer fully [that question],' a party's obligation under Rule 33 is satisfied."[10]

### 2. Objections Must be Stated with Specificity

A party served with written discovery must fully answer each request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and why, affirmatively explain what portion of the interrogatory or document request is not objectionable and the subject of the answer or response, and explain whether any responsive information or documents have been withheld.[11] The party objecting must state how the objection "relates to the particular request being opposed, and not merely that it is 'overly broad and burdensome' or 'oppressive' or 'vexatious' or 'not reasonably calculated to lead to the discovery of admissible evidence.'"[12] Any objection must clearly state how the information sought is not relevant to any claim or defense, or how the request is overbroad, burdensome or oppressive.[13]

When a party objects to a request for production, the "objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."[14] Objections interposed without also indicating whether any document or information is being withheld are improper.[15] Responses

---

[10] *Id.* (citing *Meltzer/Austin Rest. Corp. v. Benihana Nat'l. Corp.*, No. 11–542, 2013 WL 2607589, at *3 (W.D. Tex. June 10, 2013) (quoting 8B WRIGHT, MILLER & MARCUS, FED. PRAC. & PROC. § 2177 (3d ed. 2010))).

[11] *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018) (citation omitted).

[12] *Cheshire v. Air Methods Corp*, No. 15-933, 2015 WL 7736649, at *2 (W.D. La. Nov. 30, 2015) (quotations omitted).

[13] *Chevron Midstream Pipelines v. Settoon Towing, LLC*, Nos. 13-2809, 13-3197, 2015 WL 269051 at *3 (E.D. La. Jan. 20, 2015) (noting objections are boilerplate and insufficient if they merely state "the legal grounds for the objection without: (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond.") (citation omitted).

[14] FED. R. CIV. P. 34(b)(2)(C); *Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 507 (N.D. Tex. 2016), *objections overruled*, No. 13-2110, 2016 WL 5942223 (N.D. Tex. Oct. 13, 2016).

[15] *See Chevron*, 2015 WL 269051 at *4 (holding that objections fall woefully short of objecting party's burden when party objected to documents and information protected by privilege but did not describe whether any documents were withheld or the nature of withheld documents).

must also clearly state whether any responsive materials are being withheld and the specific basis for objecting and not producing same.[16]

The Federal Rules of Civil Procedure take a "demanding attitude toward objections,"[17] and courts have long interpreted the rules to prohibit general, boilerplate objections.[18]  Boilerplate objections use standardized, ready-made or all-purpose language without regard to the particular discovery request.[19]  General objections refer to objections that a party responding to discovery asserts as applicable to multiple individual requests set forth in a given set of discovery requests.[20] A general objection untethered to specific requests (and is thus also a boilerplate objection) is improper.[21]  Merely copying and pasting an objection by itself, however, does not render an objection a boilerplate objection.[22]  Likewise, in some instances, general objections may serve as an efficient response whereby the court may consider and rule upon general objections raised against sets of interrogatories or requests for production.[23]  To serve this purpose and to comply with the Federal Rules of Civil Procedure, however, the general objections must raise specific

---

[16] *Id*. (citation omitted) ("Objections that fail to provide an appropriate basis make it difficult for the parties to even informally discuss any alleged defects in a discovery request or response in hope of fixing the defects.").

[17] 8B CHARLES WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2173 (3d ed. 2021).

[18] *See, e.g.*, *Chevron*, 2015 WL 269051, at *3 (noting that an objection is boilerplate and insufficient "when it merely states the legal grounds for the objection without: (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond to the request.") (citation omitted); *see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485–86 (5th Cir. 1990) (simply objecting to requests as "overly broad, burdensome, oppressive and irrelevant," without showing "specifically how each [request] is not relevant or how each question is overly broad, burdensome or oppressive" is inadequate to "voice a successful objection.") (citations omitted).

[19] *See Tim Long Plumbing, Inc. v. Kinsale Ins. Co*., No. 20-42, 2020 WL 6559869, at *3 (E.D. Tex. Nov. 9, 2020) (citation omitted) (providing examples for boiler plate language, such as "Defendant objects to this Request, as it is overly broad and vague" and "Defendant objects to this Request to the extent it seeks discovery of information that is irrelevant and not proportional to the needs of the case.").  Objections are deemed "boilerplate" when they are identical and not tailored to the specific discovery request.  *Amazing Ins., Inc. v. DiManno*, No. 19-1349, 2020 WL 5440050, at *5 (E.D. Cal. Sept. 10, 2020) (citation omitted).

[20] *Grider v. Keystone Health Plan Cent., Inc*., 580 F.3d 119, 134 n.16 (3d Cir. 2009).

[21] *See DL v. Dist. of Columbia*, 251 F.R.D. 38, 43 (D.D.C. 2008) (citation omitted) ("When faced with general objections, the applicability of which to specific document requests is not explained further, this Court will not raise objections for the responding party, but instead will overrule the responding party's objections on those grounds." (internal quotations omitted)).

[22] *Tim Long Plumbing*, 2020 WL 6559869, at *4.

[23] *Pulsecard, Inc. v. Discover Card Servs., Inc*., 168 F.R.D. 295, 304 (D. Kan. 1996) (citations omitted).

objections and correspond to specific discovery requests.[24]  Where a general objection is connected

both to the facts of the case and specific discovery requests, they are proper; when they are

disconnected from either the facts or the discovery requests, they are not proper.

## C.  <u>Trade Secret Discovery</u>

Unlike patent, trademark or copyright cases where the intellectual property at issue is on

file with the United States Patent and Trademark Office or otherwise publicly available, trade

secret are held by the plaintiff and, by definition, are not publicly available.  While trade secrets

need not be pled with extreme specificity in a complaint,[25] even a complaint must disclose

sufficient facts to put the defendant on notice as to what is alleged to have been misappropriated

and describe the subject matter of the trade secret with sufficient particularity to separate it from

matters of general knowledge in the trade or within the special knowledge of those persons skilled

in the trade.[26]

After the motion to dismiss stage, in order for the court to manage discovery and for the

parties to prepare for trial, a more particularized identification of trade secrets than that required

---

[24] *Dickey v. Apache Indus. Servs., Inc.*, No. 18-572, 2019 WL 4261117, at *3 (M.D. La. Sept. 9, 2019) (collecting cases); *see Hall v. Louisiana*, No. 12-657, 2014 WL 2560579, at *1 (M.D. La. June 6, 2014) ("Defendants initially gave general objections applicable to all of Plaintiff's discovery requests.  But critically, after providing their general objections, Defendants addressed each and every discovery request individually, making specific objections before providing detailed and informative responses, notwithstanding those objections.").

[25] *C&M Oilfield Rentals, LLC v. Location Illuminator Techs., LLC*, No. 18-00039, 2020 WL 5745833, at *6 (W.D. Tex. Aug. 3, 2020) (citing *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 874 (5th Cir. 2013) (stating that "the undersigned finds . . . the Fifth Circuit has never held that trade secrets must be pled with extreme specificity" and finding the identification of design, manufacturing process, and method of installation of a lighting system sufficient), *R.& R. adopted by* No. 18-039, 2020 WL 7012008 (W.D. Tex. Sept. 30, 2020).

[26] *Source Prod. & Equip Co., Inc. v. Schehr*, No. 16-17528, 2019 WL 4752058, at *5 (quoting *Mfg. Auto. & Software Sys., Inc. v. Hughes*, No. 16-8962, 2018 WL 3197696, at *14) (C.D. Cal. June 25, 2018) (internal quotation omitted)); *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144 (N.D. Cal. 2019); *Next Commc'ns, Inc. v. Viber Media, Inc.*, 758 F. App'x 46, 49 (2d Cir. 2018) (party opposing summary judgment in trade secret case must be able to identify the alleged trade secret with sufficient specificity to make the moving party aware of what information it has allegedly misappropriated."); *see also Ecimos, LLC v. Carrier Corp.*, 971 F.3d 616, 643 (6th Cir. 2020) (defining trade secrets to exclude publicly disclosed or easily acquired information or matters of general knowledge in the industry, or ideas that are well known or easily ascertainable) (citations omitted).

in a complaint is necessary.[27]  No longer is identifying the allegedly misappropriated trade secret as "source code," API, or by some other category name sufficient.[28]  Plaintiff must provide specific notice of what the defendants is alleged to have misappropriated.[29]

Although many jurisdictions do not have an express requirement for pre-discovery of identification of trade secrets,[30] courts have increasingly adopted local rules or practices to issue orders at the outset of litigation as an aid to case management and discovery in trade secret cases.[31]

---

[27] *Mfg. Auto. & Software Sys.*, 2018 WL 3197696, at *15; *InteliClear, LLC v. ETC Glob. Hldgs. Inc.*, 978 F.3d 653, 658 (9th Cir. 2020); *StoneEagle Servs., Inc. v. Valentine*, No. 12-1687, 2013 WL 9554563, at *3 (N.D. Tex. June 5, 2013) (requiring reasonable particularity of alleged trade secrets at issue so both defendants and courts will have no difficulty evaluating the relevance of discovery requests and propriety of objections) (citation omitted); *Source Prod. & Equip. Co.*, 2019 WL 4752058, at *6 (stating trade secret identification with particularity avoids trial by ambush).

[28] *See, e.g., Agency Solutions.com, LLC v. TriZetto Group, Inc.*, 819 F. Supp. 2d 1001, 1016–17 (E.D. Ca. 2011) (discussing what can qualify as a trade secret and what cannot in the context of software programs);*.Integrated Cash Mgmt. Servs, Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 174 (2d Cir. 1990); *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 511 (S.D.N.Y. 2017) (noting that defendant breached confidentiality agreement when disclosing plaintiff's non-public program and user interface); *Medidata Sol., Inc. v. Veeva Sys., Inc.*, No. 17-589, 2021 WL 467110, at *4 (S.D.N.Y. Feb. 9, 2021); *see also InteliClear, LLC*, 78 F.3d at 658 (finding triable fact issue on whether trade secret was identified with sufficient particularity and noting that plaintiff must refer to tangible trade secret material rather than a system that potentially qualified for trade secret protection); *Irth Solns., LLC v. Apex Data Solns. Servs., LLC*, No. 18-6884, 2019 WL 283831, at *6–8 (W.D.N.Y. Jan. 22, 2019) (recognizing these things may qualify as trade secrets, but finding plaintiff failed to describe its program sufficiently to enable the court to find it merited trade secret protection); *Modus LLC v. Encore Legal Sols., Inc.*, No. 12-00699, 2013 WL 6628125, at *8 (D. Az. Dec. 17, 2013) (finding that only pleading the existence of "library programming scripts" that were developed to facilitate user interface and general statement as to how they were protected sufficient to overcome Rule 12(b)(6)).

[29] *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998); *see also Next Commc'ns, Inc. v. Viber Media, Inc.*, 758 F. App'x 48, 49  (2d Cir. 2018) (stating that plaintiff must identify trade secret with sufficient specificity to make the moving party aware of what information it has allegedly misappropriated).

[30] *Compare Polydyne Software, Inc. v. Celestica Int'l, Inc.*, No. 14-797, 2014 WL 12479201, at *2 (W.D. Tex. Dec. 31, 2014) (noting that neither Texas nor Fifth Circuit law requires pre-discovery identification of trade secrets) *with* CAL. CIV. PROC. §2019.210 (requiring party alleging misappropriation to identify trade secrets with reasonable particularity before commencing discovery).

[31] This trend is discussed in detail in The Sedona Conference's Commentary on the Proper Identification of Asserted Trade Secrets in Misappropriation Cases, 22 SEDONA CONF. J. 223 (2021).  *See Source Prod. & Equip. Co. v. Schehr*, No. 16-17528 (E.D. La. Feb. 8, 2019) (ECF No. 132); *see also InteliClear, LLC*, 978 F.3d at 653;  *Zenimax Media, Inc. v. Oculus VR, LLC*, 166 F. Supp. 3d 697, 703 (N.D. Tex. 2015) (court issued Identification Order in misappropriation of intellectual property case involving virtual-reality headset); *StoneEagle Servs., Inc.*, 2013 WL 9554563, at *5 (court issued Identification Order in misappropriation case involving medical billing platform).  For additional cases requiring plaintiffs bringing claims of trade secret misappropriation to identify, with reasonable particularity, the alleged trade secrets at issue, *see Arconic, Inc. v. Novelis, Inc*., 17-1434, 2020 WL 7247112, at *1 (W.D. Pa. Dec. 9, 2020); *AgroFresh Inc. v. Essentiv LLC*, No. 16-662, 2019 WL 563900, at *1 (D. Del. Feb. 4, 2019), *opinion adopted*, No. 16-662, 2019 WL 9514501 (D. Del. Apr. 23, 2019); *United Servs. Auto. Ass'n v. Mitek Sys., Inc*., 289 F.R.D. 244 (W.D. Tex. 2013), *aff'd*, 2013 WL 1867417 (W.D. Tex. Apr. 24, 2013); *Switch Commc'ns Group v. Ballard*, No. 11–00285, 2012 WL 2342929 (D. Nev. June 19, 2012); *Powerweb Energy v. Hubbell Lighting, Inc.*, No. 12–220, 2012 WL 3113162 (D. Conn. July 31, 2012); *Ikon Office Sols., Inc. v. Konica Minolta Bus. Sols., U.S.A., Inc*., No. 08–539, 2009 WL 4429156 (W.D.N.C. Nov. 25, 2009); *DeRubeis v. Witten Techs., Inc*., 244 F.R.D. 676 (N.D. Ga. 2007); *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915 (N.D. Ill. 2001).

Such orders require that plaintiff identify, with reasonable particularity, the matter which it claims constitutes trade secret(s), including as much detail as possible in that disclosure (i.e., a specific description of each alleged trade secret specifying, on an individual basis for each such alleged trade secret, the exact identity, scope, boundaries, constitutive elements, and content of each alleged trade secret, including any asserted combinations).

In fact, the Eastern District of Louisiana recently adopted an amendment to its Local Rules adding a new Local Rule 26.3.[32]   This new rule, effective January 1, 2024, requires a party asserting a claim that trade secrets have been misappropriated to include with the Rule 26(a) initial disclosures a Trade Secret Identification Statement that contemplates a greater degree of particularity than Rule 8.[33]   The identification requires more than a description of the categories within which the trade secret information may fall, such as that set forth in the publicly available complaint, and more than simple generalized descriptions, such as formulas, plans, or drawings.[34] The requirement of reasonable particularity serves to limit the permissible scope of discovery by distinguishing the trade secrets from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade.[35]

---

[32] https://www.laed.uscourts.gov/news/second-notice-amendments-local-rules-75-781-56-and-263.

[33] *Id*.

[34] *See DeRubeis*, 244 F.R.D. at 679 (stating that generally listing software, data processing algorithms, and processes that a plaintiff developed, owned, or licensed is insufficient as such disclosures only reveal the end results of, or functions performed by, the claimed trade secrets); *Switch*, 2012 WL 2342929 at *5 (identifying various concepts, elements, or components that make up designs insufficient without specific description of what particular combination of components renders each of its designs novel or unique, how the components are combined, and how they operate in unique combination); *Ikon*, 2009 WL 4429156, at *3 n.3 (holding that lengthy, descriptive, but non-specific, paragraphs are insufficient).

[35] *Cf. IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583-84 (7th Cir. 2002) (noting that 43-page description of software package insufficient because it failed to separate the trade secrets from the other information that goes into the software package that is known to the trade); *Yeiser Research & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1044 (S.D. Cal. 2017) (quotation omitted).  For additional cases requiring plaintiffs bringing claims of trade secret misappropriation to identify, with reasonable particularity, the alleged trade secrets at issue, see *Arconic, Inc. v. Novelis, Inc*., No. 17-1434, 2020 WL 7247112, at *1 (W.D. Pa. Dec. 9, 2020); *AgroFresh*, 2019 WL 563900, at *1; *Mitek*, 289 F.R.D. at 244; *Switch Commc'ns Group v. Ballard*, No. 11–00285, 2012 WL 2342929 (D. Nev. June 19, 2012); *Powerweb Energy v. Hubbell Lighting, Inc*., No. 12–220, 2012 WL 3113162 (D. Conn. July 31, 2012); *Ikon Office Sols., Inc. v. Konica Minolta Bus. Sols., U.S.A., Inc*., No. 3:08–539, 2009 WL 4429156 (W.D.N.C. Nov. 25, 2009); *DeRubeis*, 244 F.R.D. at 676; *AutoMed Techs,* 160 F. Supp. 2d at 915.

To identify a trade secret with reasonable particularity, the plaintiff must provide concrete information that "clearly refer[s] to tangible trade secret material."[36]   Plaintiff cannot rely on "catchall phrases" or simply identify general categories of trade secrets.[37]   The details provided in the identification must be more than vague labels, high level concepts, and rudimentary graphics.[38] Further, the attachment of thousands of pages of documents, while voluminous, does not equate to detail necessary to allow the court and defendant to understand exactly what Plaintiff is alleging.[39] A court should not be asked to wade through thousands of pages of documents in an effort to ferret out a trade secret like a hidden acorn.[40]

Courts have been descriptive about what fails the "reasonable particularity" requirement: a laundry list of general categories of alleged "trade secret" information or lengthy, descriptive, but non-specific, paragraphs,[41] generally listing software, data processing algorithms, and processes that a plaintiff developed, owned, or licensed or disclosures that only reveal the end results of, or functions performed by, the claimed trade secrets,[42] and various concepts, elements, or components that make up designs.[43]   In contrast, a plaintiff identifies its trade secrets with reasonable particularity when it separately lists out each of the individual alleged trade secrets and identifies each claim so that the reader understands how each claim differs from public domain

---

[36] *InteliClear,* 978 F.3d at 658; *IDX Sys. Corp.,* 285 F.3d at 583 ("[P]laintiff must do more than just identify a kind of technology and then invite the court to hunt through the details in search of items meeting the statutory definition.").
[37] *InteliClear,* 978 F.3d at 658.
[38] *Next Comm'cns Inc. v. Viber Media, Inc.*, 758 F. App'x 46, 49 (2nd Cir. 2018).
[39] *InteliClear,* 978 F.3d at 658 ("It is inadequate for plaintiffs to 'cite and incorporate by reference hundreds of documents that purportedly reference or reflect the trade secret information.'") (citation omitted); *IDX Sys.*, 165 F. Supp. 2d at 819  ("Long lists of general areas of information containing unidentified trade secrets are not substitutes for particularized and concrete trade secrets."); *VIA Techs., Inc. v. Asus Computer Int'l*, No. 14-3586, 2016 WL 5930280, *3 (N.D. Ca. Oct. 12, 2016) (noting that a trade secret plaintiff may not use broad, catch-all language as a tactic to preserve an unrestricted, unilateral right to subsequent amend its trade secret statement).
[40] *VIA Techs.*, 2016 WL 5930280 at *3 (noting that a trade secret plaintiff may not hide its trade secret in plain sight by including voluminous attachments to its trade secret statement).
[41] *See Ikon*, 2009 WL 4429156 at *3 & n.3.
[42] *See DeRubeis*, 244 F.R.D. at 679.
[43] *See Switch*, 2012 WL 2342929 at *5.

filings[44] or provides a specific description of what particular combination of components renders each of its designs novel or unique, how the components are combined, and how they operate in unique combination.[45]

Essentially, plaintiff must do more than identify a technology or document containing a potential trade secret "and then invite the court to hunt through the details in search of items meeting the statutory definition [of a trade secret]."[46]  This is especially true in cases where the trade-secret claim involves sophisticated, highly technical issues that the district court or jury, on its own, is unlikely to have the expertise required to discern exactly what constitutes a trade secret.[47]  Where the alleged trade secret consists of incremental variations or advances in the state of art in a highly specialized field, a more exacting level of particularity may be required to distinguish the alleged trade secret from matters already known to persons skilled in the field.[48] Vague and overly inclusive descriptions that essentially assert that all information about software constitutes trade secrets are not plausible.[49]

For instance, if the allegedly misappropriate trade secret is executable object code, plaintiff must name the executable files and identify what about their functionality is alleged to be a trade secret.  If plaintiff alleges misappropriation of source code, it must identify the specific lines of code or programs claimed to be a trade secret by, for example, printing out the code on paper with numbered lines and identifying the allegedly misappropriated lines by page and line number or by highlighting the code alleged to be secret, avoiding the improper inclusion of non-secret auto-generated code, open source material, or basic code mandated by the programming language or

---

[44] *See Mitek,* 289 F.R.D. 244, 249 (W.D. Tex. 2013).
[45] *See Switch Commc'ns*, 2012 WL 2342929 at *5.
[46] *IDX Sys.*, 285 F.3d at 583–84; *see also Source Prod.*, 2019 WL 4752058, at *7.
[47] *Source Prod.*, 2019 WL 4752058, at *7 (citing *Imax*, 152 F.3d at 1167).
[48] *Calendar Rsch. LLC v. StubHub, Inc.*, No. 17-04062, 2020 WL 4390391 (C.D. Cal. May 13, 2020) (citations omitted).
[49] *IDX Sys.*, 285 F.3d at  583–84; *see also Source Prod.*,  2019 WL 4752058, at *7.

type of program within its trade secret identification.  If plaintiff contends that algorithms or formulas existing within code are trade secrets, it must identify the mathematical information and the precise combination of functions that comprise the algorithms at issue. If plaintiff contends that higher-level architecture of the software is a trade secret, it must detail the combination of the specific algorithms employed.  If plaintiff alleges trade secret data structures, the nature of those structures must be defined with particularity.[50]

## IV.   ANALYSIS OF OBJECTIONS AND SPECIFIC RESPONSES

### A.  General Objections

Torsh's general objections on pages 1-3 of its responses and amended responses to AE's First Set of Interrogatories (ECF Nos. 40-5 and 40-10) are improper and lack the specificity required by Rule 33.  Objections must be specifically identified in response to a particular interrogatory and indicate how the particular interrogatory is improper or objectionable. Accordingly, the General Objections are stricken.

### B.  Specific Objections

Throughout its interrogatory responses, Torsh objects on the basis that the information sought is equally available to AE.  That objection is overruled.  While AE may have certain information from Torsh, AE cannot know what information Torsh contends constitutes its trade secret that was allegedly misappropriated.  Torsh is obliged to specifically identify what particular information it provided to AE that it contends constitutes trade secret information uniquely within Torsh's possession.[51]

---

[50] *See* Charles Tait Graves & Brian D. Range, *Identification of Trade Secret Claims in Litigation: Solutions for a Ubiquitous Dispute*, 5 NW. J. TECH. & INTELL. PROP. 68, 94-95 (2006).
[51] *V5 Techs. v. Switch, Ltd.,* 334 F.R.D. 297, 305 n.12 (D. Nev. 2019) (rejecting defendant's argument that "its supplemental responses are appropriate on the basis that Plaintiff is equally able to discern which trade secrets and intellectual property it is that Defendant contends were stolen"); *InteliClear*, 978 F.3d at 658 (stating that the plaintiff "must identify the trade secrets" and that "[i]dentifying trade secrets with sufficient particularity is important because defendants need 'concrete identification' to prepare a rebuttal").

Similarly, the prematurity objection is overruled.  Torsh is obliged to provide a thorough response, even one that will take time and effort to answer, within Rule 33's thirty day deadline.[52] While Rule 26(e) imposes an obligation to supplement responses,[53] that obligation does not equate to an automatic "extension of the deadline by which a party must deliver" its information.[54]

Torsh cites Rule 33(d) in response to various interrogatories.  Rule 33(d), however, is only available when the answer to the interrogatory may be determined by a review of the documents. If the requesting party is unable to discern which portion of the referenced business records constitutes the alleged trade secret, reliance on Rule 33(d) is improper.[55]  For that reason, Torsh's reference to Rule 33(d) to identify its trade secrets is insufficient.  AE has no basis to discern which portions of Torsh's business information Torsh contends constitute trade secrets versus public information or information within the general knowledge of those skilled in the industry.

### C.  Interrogatory Nos. 1, 2, 3, 4 and 5

With regard to Interrogatory No. 1, Torsh's amended responses specify in greater detail the categories of the four alleged trade secrets at issue.  ECF No. 40-10 at 4-5.  With regard to the mobile and Talent API, Torsh has not, however, identified the specific portions of that information,

---

[52] *Areizaga v. ADW Corp.*, 314 F.R.D. 428, 437 (N.D. Tex. 2016) (citing *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 307–08 (5th Cir. 1973)).

[53] *Berenson v. Adm'r s of Tulane Univ. Educ. Fund*, No. 17-329, 2017 WL 6372831, at *3 (E.D. La. Dec. 13, 2017); *see also Moore v. BASF Corp.*, No. 11-1001, 2012 WL 12990571, at *2 (E.D. La. May 2, 2012).

[54] *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996); *see also Van Baelen v. Sabine Transp. Co.*, No. 00-2155, 2001 WL 474273, at *2 (E.D. La. May 2, 2001) (Clement, J.) (noting that Rule 26(e)'s duty to supplement does not enable a party to circumvent Rule 26(a)'s deadlines or a court's scheduling order); *see also Reed v. Iowa Marine & Repair Corp.*, 16 F.3d 82, 85 (5th Cir. 1994) (indicating that the purpose of obligation to supplement is to prevent prejudice and surprise).

[55] *See Moog Inc. v. Skyryse, Inc.,* No. 22-187, 2022 WL 16852364, at *3 (W.D.N.Y. July 22, 2022) (requiring narrative response to interrogatory seeking identification of trade secrets rather than reliance on Rule 33(d*)); KLX Energy Servs. LLC v. Magnesium Mach., LLC,* No. 20-1129, 2022 WL 1785493, at *1 (W.D. Okla. June 1, 2022) (rejecting Rule 33(d) in trade secret case and noting that the defendant "could look at every one of the previously-produced documents and not know, with any certainty, which ones [plaintiff] relies on as containing, describing or identifying a particular trade secret . . . .").

including which executable files, lines of code, protocols, data structure, definitions or other information, contained in Torsh 525-536, 744-788 and 813-14 constitutes a trade secret. Torsh must specify, within the identified documents, those portions it contends constitute trade secrets versus non-secret auto-generated code, open source material, or basic code mandated by the programming language or type of program within the identified documents.

With regard to the item numbered 3 of the amended response to Interrogatory No. 1, Torsh identifies categories of items (programming techniques, functional methods, procedures, algorithms, etc.) rather than specifically identifying the trade secret information within those categories as necessary to distinguish same from publicly available information. Using technical terms such as "programming techniques," algorithms, or "data coding" is not a free pass that relieves a plaintiff of identifying, with reasonable particularity, the specific programming technique, algorithm, or data coding that it contends qualifies as a trade secret. Torsh must identify which portions of the identified documents it contends reflect trade secret material versus generally available information.

Torsh must supplement its responses to Interrogatory Nos. 1, 3, 4 and 5 to specifically identify, in narrative form and with citation to particular portions of technology, that which it contends constitutes its trade secrets. With regard to Interrogatory No. 2, however, Torsh has sufficiently responded to that inquiry by asserting that it treats as confidential and proprietary all information provided to AE. Whether all of that information has been maintained as confidential and proprietary or qualifies as trade secrets are different issues. Torsh has fully responded.

### D. **Interrogatory Nos. 6, 7, 8 and 9**

Torsh's objection that the interrogatory assumes facts not in evidence is improper[56] and lacks the specificity required by Rule 33(b)(4). Further, the proviso that the responses are "subject to" the objections and general objections is improper and obfuscates the responses and fails to make clear whether any information is being withheld based on the objections.[57]

While matters of public or general knowledge cannot qualify as trade secrets, "a compilation of the public information which incorporates the information in a unique way is, nonetheless, protectable as a trade secret."[58] Thus, "a trade secret can exist in a combination of characteristics and components each of which, by itself, is in the public domain, but the unified process, design and operation of which in unique combination, affords a competitive advantage and is a protectible secret."[59] As a result, a unique combination of items that by themselves do not constitute trade secrets, can be a trade secret.[60]

---

[56] *Petconnect Rescue, Inc. v. Salinas,* No. 20-00527, 2022 WL 448416, at *7 (S.D. Cal. Feb. 14, 2022) (noting that the objection to "assuming facts not in evidence" is not a proper objection in the course of discovery) (citing *Garcia v. Clark,* No. 10-447, 2012 WL 1232315, at *2 (E.D. Cal. Apr.12, 2012) (("Assuming facts not in evidence may be the basis for an objection during trial or some other evidentiary hearing," but not during the course of discovery)); *Two Rivers Pipeline & Constr. Co., Inc. v. Cimarex Energy Co.,* No.19-49, 2020 WL 6379302, at *4 (W.D. Tex. Sept. 14, 2020) (overruling "assumes facts not in evidence' objection in discovery context*); Roesberg v. Johns–Manville Corp.,* 85 F.R.D. 290, 298 (D.C. Pa.1980) ("That an interrogatory may contain an element of conclusion is not objectionable on this ground alone."); *Hamilton v. Kerik,* No. 01-6934, 2002 WL 31834428, at *1 n.2 (S.D.N.Y. Dec. 17, 2002) ("Since the dispute arises out of a discovery request, defendant's objection that the request 'assumes facts not established' is frivolous since the purpose of discovery is to learn facts.").

[57] "The practice of responding to discovery requests 'subject to' and/or 'without waiving' objections is manifestly confusing (at best) and misleading (at worst), and has no basis at all in the Federal Rules of Civil Procedure." *Heller v. City of Dallas*, 303 F.R.D. 466, 486–87 (N.D. Tex. 2014) (citations omitted). Such an objection paired with a response "preserves nothing and serves only to waste the time and resources of both the Parties and the Court." *Id.* at 487. To the extent any response or production is done "subject to" or "without waiving" objections other than privilege or work product, such objections are waived. *Id.*

[58] *Centurum Info. Tech. Inc. v. Geocent, LLC*, No. 21-0082, 2021 WL 533707, at *13 (E.D. La. Feb. 12, 2021) (quoting *Geo Grp., Inc. v. Cmty. First Servs., Inc.*, No. 11-1711, 2012 WL 1077846 (E.D.N.Y. Mar. 30, 2012)).

[59] *Tewari De-Ox Systems, Inc. v. Mountain States/Rosen, L.L.C.*, 637 F.3d at 613 (quoting *Imperial Chem., Ltd. v. Nat'l Distillers & Chem. Corp.*, 342 F.2d 737, 742 (2d Cir. 1965)); *see also Metallurgical Indus. V. Fourtek, Inc.*, 790 F.2d 1195, 1202 (5th Cir. 1986) (rejecting contention that a combination of disclosed technologies cannot itself constitute a trade secret).

[60] *See Complete Logistical Servs., LLC v. Rulh*, 350 F. Supp.3d 512, 518 (E.D. La. 2018); *Ultraflor Corp. v. Pelican Tank Parts, Inc.*, 926 F. Supp. 2d 935, 959 (S.D. Tex. 2013); *Centurum,* 2021 U.S. Dist. LEXIS 27661, at *40.

Although Torsh initially responded to Interrogatory No. 6 by indicating that AE came into possession of its trade secrets on or after February 22, 2019, Torsh amended that response to identify specific phone calls and emails in which it contends its trade secrets were disclosed.  AE may obtain further details regarding those specific disclosures through additional discovery, including depositions.  Torsh need not further supplement its response to Interrogatory No. 6.

With regard to Interrogatory Nos. 7 and 8, however, AE is entitled to know (a) what Torsh's trade secrets are; (b) who disclosed the trade secret; and (c) the identity and date of each trade secret disclosure to AE.  The purpose of the disclosure in any greater detail than in connection with performance of its contractual obligations, however, may be obtained through additional discovery, including deposition.  If Torsh's trade secret results from a combination of items that themselves do not constitute trade secrets, AE is entitled to know that.  Likewise, if the trade secret is newly developed by Torsh, AE is entitled to know who created or authored the trade secret and when.  Indeed, courts have required disclosure of such information in trade secret litigation, except when that information has little relevance to the trade secret claim.[61]

As the objecting party, Torsh must established that the author and date could have no possible bearing on any claim or defense in the litigation, which it has not done.  In this case, Torsh contends that it has fully responded by identifying the three individuals who authored or created the trade secret.  ECF No. 44 at 11.  If, during discovery, Torsh's interrogatory response is found to be inadequate or incomplete and that prejudices AE, then AE may seek appropriate relief.  At this point, however, Torsh has asserted that it has provided the requested identities and as such,

---

[61] *Compare Symbria, Inc. v. Callen*, No. 20-4084, 2022 WL 20508639, at *2 (N.D. Ill. Apr. 4, 2022) (granting motion to compel response to interrogatory seeking (a) identity of the individual who authored or otherwise created the trade secret, (b) the date or date range of creation, and (c) all sources used, consulted, and/or relied upon to create or author the trade secret); *with Symbria, Inc. v. Callen*, No. 20-4084, 2022 WL 20508638, at *2 (N.D. Ill. Apr. 11, 2022) (denying motion to compel author and date of trade secret creation as having little relevance to the trade secret claim).

the court cannot compel any further response as the authors of the trade secrets have been identified.  There is no indication of when, however, these people created the trade secrets at issue. Torsh must supplement its response to identify when these identified people created or invented the specified trade secrets.

### E.  Interrogatory Nos. 11-12

Interrogatories 11 and 12 seek descriptions of Torsh's damages sustained from breach of contract and trade secret misappropriation.  Torsh's objection on the grounds of compound nature (absent interrogatories in excess of the 25-interrogatory limit) and prematurity are overruled.  Its objection based on attorney-client privilege and work product are insufficient as Torsh fails to provide the information required by Rule 26(b)(5)(A),[62] which is required to properly invoke these protections.  Further, the attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."[63]  Likewise, the work product doctrine protects documents and tangible things and intangible mental impressions, conclusions, opinions or legal theories of counsel, not facts, even if those facts were learned from work product documents that are not themselves discoverable.[64] An interrogatory seeking a description of damages, therefore, would appear to call for facts, not any attorney-client communication or work product.

Moreover, pursuant to Rule 26(a)(1)(A)(iii), unless exempted or otherwise stipulated or ordered by the court, a party is obligated to disclose "a computation of each category of damages claimed by the disclosing party" and to supplement the initial disclosures.  FED. R. CIV. P. 26(a)(1)(A)(iii); 26(e).  Even when a party will rely on an expert to calculate damages, it cannot

---

[62] *Heller*, 303 F.R.D. at 486.
[63] *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981)(emphasis added).
[64] 8 C. Wright, A. Miller & R. Marcus, FEDERAL PRACTICE AND PROCEDURE § 2024, at 337–38 (citing FED. R. CIV. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495 (1947)).

refuse to answer an interrogatory regarding damages before expert disclosures are due.[65]   Given Rule 26's goal of accelerating the exchange of basic information needed in most cases to prepare for trial or make an informed decision about settlement,[66] "computation" generally requires disclosure of a specific dollar figure.[67]   Simply reciting a dollar figure, however, is not enough.[68]

Torsh must supplement its answer to Interrogatory Nos. 11 and 12 based on the information available at the time of its response.   Torsh's interrogatory responses may of course be supplement by its experts' reports, in accordance with the Scheduling Order.

### F.   Financial Statements and Tax Returns

While tax returns are neither privileged nor undiscoverable,[69] the Fifth Circuit has recognized the special nature of income tax returns in finding that the district court abused its *sua sponte* power in sanctioning an attorney by requiring the disclosure of his income tax returns, in part, because income tax returns are "highly sensitive documents."[70]   Citing *SEC v. Cymaticolor*, 106 F.R.D. 545, 547 (S.D.N.Y. 1985), the court indicated that disclosure of tax returns for purposes of discovery is appropriate when the requesting party demonstrates that the returns are (1) relevant

---

[65] *In & Out Welders, Inc. v. H & E Equip. Servs., Inc.,* No. 16-86, 2018 WL 1370600, at *6 (M.D. La. Mar. 16, 2018); *see Broussard v. Go-Devil Mfg. Co. of La.,* No. 08-124, 2009 WL 10669961, at *1 n.2 (M.D. La. Aug. 13, 2009) ("Under the federal rules of civil procedure, however, [defendant] is not required to wait until the expert report deadlines to obtain [plaintiff's] damage computations and is permitted to obtain that information through initial disclosures and discovery requests preceding the production of expert reports.").

[66] Fed. R. Civ. P. 26(a) 1993 advisory committee note.

[67] *See Borroum v. RJM Acquisition LLC*, No. 07–613, 2008 WL 11415899, at *3 (W.D. Tex. Mar. 28, 2008) (citing *Bullard v. Roadway Exp.,* 3 F. App'x 418, 420 (6th Cir. 2001) (affirming district court's sanctions where "[a]stonishingly" plaintiff failed to make any reference to a dollar figure); *Synergetics, Inc. v. Lumpkin,* No. 04-1650, 2005 WL 2179648, at *1(E.D. Mo. Sep. 9, 2005) (granting motion to compel where disclosure failed to set out "specific amounts" of damages)).

[68] *Id*. (citing *Doggett v. Perez*, No. 02-282, 2004 WL 2939600, at *5 (E.D. Wash. Mar. 4, 2004) (plaintiff must provide more than lump sum statement of damages sustained); *Sanchez v. Hendrick's Hallowell Chevrolet*, No. 05-0746, 2006 WL 2884778, at *1(E.D. Cal. Oct. 10, 2006) (same); *McKinney v. Reassure Am. Life Ins. Co.,* No. 06-271, 2006 WL 3228791, at *1 (E.D. Okla. Nov. 2, 2006) (same); *City & County of San Francisco v. Tutor–Saliba Corp*., 218 F.R.D. 219, 221 (N.D. Cal. 2003) (same); *First Nat'l Bank of Chicago v. Ackerley Commc'ns, Inc.,* No. 94-7539, 2001 WL 15693, at *6 n.6 (S.D.N.Y. Jan. 8, 2001) ("calculation of damages requires more than merely setting forth the figure demanded"))).

[69] *F.D.I.C. v. Legrand*, 43 F.3d 163, 172 (5th Cir. 1995).

[70] *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1411 (5th Cir. 1993).

to the subject matter of the action; and (2) there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable.[71]

Courts in the Fifth Circuit have not differentiated between personal and business tax returns in applying this two-part test[72] or distinguished their cases from the unique facts of *Natural Gas Pipeline Co. of America*[73] in applying this two-part test to motions to compel tax returns.[74]  Once the moving party has shown relevance, "the burden shifts to the party opposing production to show that other sources exist from which the information contained in the income tax returns may be readily obtained."[75]

---

[71] *SEC*, 106 F.R.D. at 547 (citing *Smith v. Bader*, 83 F.R.D. 437, 438 (S.D. N.Y. Aug. 31, 1979)).

[72] *See Levelland/Hockley Cty. Ethanol, LLC v. Layne Christensen Co.*, No. 08-112, 2009 WL 10678213, at *4 (N.D. Tex. June 11, 2009) (differentiating between the personal tax returns of shareholders, board members, or the like and tax returns of the corporation and ruling the personal tax returns are "sensitive documents" according to *Natural Gas Pipeline Co. of Am.* that should not be produced, while the corporate tax returns are plainly relevant to damages and must be produced); *see also Mohnot v. Bhansali*, No. 14-00912, 2001 WL 515242, at *2 (E.D. La. May 14, 2011) (responding to the argument that because the corporate defendant voluntarily turned over tax records, the plaintiff should produce his by saying "The Court does not find that Bhansali's voluntary production of *corporate* tax returns merits an order that the plaintiffs produce their *personal* income tax returns" (emphasis in original)).

[73] *See Ferguson v. Tex. Farm Bureau Bus. Corp.*, No. 17-00111, 2019 WL 12469794, at *2 (W.D. Tex. Apr. 26, 2019) (citations omitted) (stating "*Natural Gas* was a unique situation: a district court sua sponte ordered an attorney to produce unrequested tax returns as a sanction for bad faith conduct based solely on its inherent powers. The Fifth Circuit, noting the 'novelty' of that situation, concluded traditional sanctions 'would have accomplished the court's purpose more properly' and therefore reversed an order compelling release of tax returns. In more analogous situations—where tax returns are sought as part of relevant discovery—courts in the Fifth Circuit consistently hold they are discoverable upon a relevance showing before the burden shifts to the party resisting discovery."); *Lewis v. Shafer Prof. Res., Inc.*, No. 19-353, 2021 WL 2216626, at *1 n.2 (S.D. Tex. Jan. 22, 2021).

[74] *See, e.g., Butler Asset Funding Grp. LLC v. Adams & Reese, LLP*, No. 07-386, 2008 WL 4059867, at *9 (E.D. La. Apr. 4, 2008) (in ruling on personal tax returns stating "[a] number of courts, including the Fifth Circuit Court of Appeals, have held that, because tax returns are 'highly sensitive documents,' their discovery requires that the requesting party demonstrate both: (1) that the requested tax information is 'relevant' to the subject matter of the action; and (2) that there is a 'compelling need' for the information because the information contained in the tax returns is not 'otherwise readily obtainable' through alternative forms of discovery . . . .") (citing *Nat'l Gas Pipeline Co. of Am.*, 2 F.3d at 1411); *Marine Power Holding, LLC v. Malibu Boat, LLC*, No. 14-0912, 2016 WL 366729, at *9 (E.D. La. Jan. 29, 2016) (Roby, M.J.) (applying the two part test to business tax returns and determining not relevant to the case); *Asset Funding Grp., LLC v. Adams & Reese, LLP*, No. 07-02965, 2008 WL 927937, at *9 (E.D. La. Apr. 4, 2008) (holding that the requesting party has failed to demonstrate a compelling need as they may obtain the information through alternative discovery inquiries and that other documents produced provide the same if not more relevant information); *U.S. ex rel. Univ. Loft Co. v. AGS Enter., Inc.* No. 14-528, 2016 WL 9462335, at *9 (W.D. Tex. June 29, 2016) (holding that tax returns should be produced as they were relevant to the issue of damages and an expert reviewing the claim for damages based on lost profits would rely on the income tax returns as well as other statements).

[75] *F.D.I.C.*, 43 F.3d at 172.

In this case, Torsh argues that the information is not relevant to damages under the DTSA because those damages are based on the benefits derived by defendant.  ECF No. 44 at 12.  The damages sought in this case, however, are not limited to benefits derived by defendant due to alleged misappropriation of trade secrets.  Rather, Torsh seeks damages for breach of contract as well as its actual losses sustained as a result of the alleged misappropriation, including lost profits, consequential damages, cash flow and other items of damage.  As such, its income and financial condition as reflected on its tax return and financial statements are relevant to the litigation.

Having established relevance, it becomes Torsh's burden to establish that other sources exist from which the information contained in the income tax returns may be readily obtained.  Torsh cites to its billing records and licenses as an alternate source.  Torsh does not, however, establish that billing records and license sales reflect the substantial equivalent of the information contained in their tax returns and financial statements.  Accordingly, Torsh must produce its tax returns and financial statements.

The time period at issue, however, is improper.  Torsh and AE entered into their contract in 2019.  This case involves Torsh's losses from a breach of that contract and its current damages from AE's alleged misappropriation of trade secrets.  As such, Torsh's income and earnings for the three years before 2019 are not relevant to the damages it sustained as a result of AE's alleged breach of the 2019 contract or misappropriation.  Accordingly, the time period will be restricted to the period beginning in 2019.

### G.  The Requests for Production

Initially, the General Objections set forth on pages 1-3 of Torsh's responses are overruled for lack of specificity.  Likewise, its repeated "overly broad, unduly burdensome and as seeking information that is neither relevant to any claim or defense in this lawsuit nor proportional to the

needs of the case" without any specific application of those contentions to the particular request are overruled for lack of specificity. Finally, the "[s]ubject to and without waiving these objections" proviso is stricken as such language serves no purpose other than to confuse the requesting party as to whether any document has been withheld based on the asserted objection.

AE contends that Torsh's boilerplate objections and promised "rolling production" are improper, and it cannot discern whether Torsh has withheld any documents based on its objection. ECF No. 40-11 at 17. The Court has already addressed the general or boilerplate objections, and Torsh indicates that it has already agreed to produce nonprivileged responsive documents identified in through its reasonably diligent search. ECF No. 44 at 15. In light of Torsh's affirmative representation that it will produce all nonprivileged responsive documents identified through its reasonably diligent search, the Court need not compel any further response.[76]

While Torsh has agreed to produce nonprivileged responsive documents, however, it has simply indicated it would proceed on a "rolling production" basis. A responding party is obliged to either produce the requested documents or ESI "no later than the time for inspection specified in the request or another reasonable time specified in the response." FED. R. CIV. P. 34(b)(2)(B). The Advisory Committee Notes clarify that

> production must be completed either by the time for inspection specified in the request or by another reasonable time specifically identified in the response. When it is necessary to make the production in stages the response should specify the beginning and end dates of the production.[77]

---

[76] The Court notes, however, that proper substantiation of a privilege objection imposes an evidentiary burden under Rule 26(b)(5). *United States v. Newell*, 315 F.3d 510, 525 (5th Cir. 2002) (citation omitted) (recognizing that the party asserting privilege bears the burden of proof sufficient to substantiate its claims); *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001); *Hodges, Grant & Kaufman v. United States*, 768 F.2d 719, 721 (5th Cir. 1985). The party asserting the objection must prove that each document it has withheld is privileged, and it cannot rely merely on a blanket assertion of privilege. *Jordan v. Aries Marine Corp.*, No. 14-377, 2015 WL 151336, at *3 (E.D. La. Jan. 12, 2015) (citing *In re Equal Emp't Opportunity Comm'n*, 207 F. App'x 426, 431 (5th Cir. 2006); *Woodard v. Andrus*, No. 03–2098, 2008 WL 2540600, at *3 (W.D. La. June 20, 2008) (citing *High Tech Commc'ns, Inc. v. Panasonic Co.*, No. 94–1447, 1995 WL 45847, at * 1 (E.D. La. Feb. 2, 1995) (citing *Hodges*, 768 F.2d at 721; *In re Shell Oil Ref.*, 812 F. Supp. 658, 661 (E.D. La. 1993))).

[77] FED. R. CIV. P. 34(b)(2)(B), advisory committee notes, 2015 amendments.

AE is entitled to a date certain by which Torsh's rolling production will be completed as Rule 34 plainly requires the responding party to specify an end date within a reasonable period of time, which no doubt will depend on the extent and complexity of the search and production at issue.

**V.     CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendant's Motion to Compel (ECF No. 40) is GRANTED IN PART AND DENIED IN PART as stated herein.

IT IS FURTHER ORDERED that Plaintiff supplement its Interrogatory Responses as outlined herein within 30 days.

IT IS FURTHER ORDERED that Plaintiff, within 7 days, specify a reasonable end date for its document production.

New Orleans, Louisiana, this _____15th_____ day of November, 2023.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE